*177oí, the Court, bv
Judge thjgjcÉfe','
«’r ¡d^erí Todd, the ancestor of* the appellees, on the .©? September T7®,$-,-:.entered into a written agree-itwith a certaip;.rsa^c.;Morr,isQn, under the.s^ail of it:he; gartiesK by-which'hploouncl himself to convey-io tthe said Morrison- 6,000 acres'of land in the count)' of Fayette, as soon as* a deed could be reasonably, obtained.;, ¡reconsideration whereof,-Morrison bound ljinteelf 1° *he- said Todd six hundred pounds; one hun-pounds thereof in merchandize, at the price of not
;ifopre than one hundred per centum above the original j-cóst, against the first of January 1785, i'wénty-five --'pounds in cash, and the sanie amount in merchandize, '■«'gainst the first of May 1736, and the balance against j'thefirst of May 1788.
. J5y endorsements on the hack of ’this agreement, it appears -to have been assigned, on the 20th of November -1784, by Isaac Morrison to Isaac Cox, and on the £flth of December 1785, one equal third part of the /.Ooqte.nts thereof was assigned by Isaac Cox to James .Morrison, an<j 01!e third to Isaac Morrison.
* ;- Cox, Isaac and James Morrison have all since departed this life, and the agreement being found among ■¿the papers of James, after his death, his,son, James ,H'orrison, on the 12th of February 1807, nTa.de an en-.'.¿ossement thereon, “assigning all the title of James Morrison to John and James Bates.”’
, :The Bateses presented the agreement to Robert Todd, and demanded of him a conveyance;- hut, instead'of conveying the land, a written agreement was then entered into between the Bateses and Todd, and .sealed by the parties, wherein it was stipulated, “ that jin consideration of certain accounts due said Bateses, assignees of the heirs of James Morrison, formerly of ^|§.rdstown, the saidTodd will pay said Bateses the v’a-lue of seven hundred acres of good' second rate^ land, - in what was Fayette county, the 23d of September -ITS'iy&c. the- payment to be made in treasury warrant orimililary lands, at their cash valuation,” &c.; and at *178the same tip.e, Ádjwi.tyon the 16th of Ma‘rehl807, the Bateses, oif the bMck'ofan aecouñt draws'll,pin favor qf Jabíes Morrisonj-fór £59 16s 1 le¿, against Toti.ert T.odd, for merchandize received by the latter on th.e 1.2 th of July 1,785, gave*a receipt acknowledging the receipt of sai$ accounffrom Todd, in a bond for lands, as part of the<Qonsideration paid by James Morrison for^.contract for six thousand acres .of land; and .’at the'same time "the Bateses delivered to Todd the written agreement|jsyh-ich had been executed between him and Isaac Morrison, on the 23d of .September 1784, for the 6,000 acres of land.
Todd failed to comply with this latter obligation, and the Bateses brought an action against him thereon at law. . During the pendency of the suit, another agreement tvas entered into between the Bateses and Todd, by which the suit was dismissed', and Todd executed to the Bateses two obligations, one for the payment of $1,650 in money, and the other for the payment of $1,650 in land. These bonds were afterwards assigned by the Bateses to Henry Skipwith, of Virginia, and suits brought thereon, and judgments recovered, at •law.
To enjoin these judgments, and to be relieved from the various contracts and agreements, the heirs and representatives of Robert Tadd, and John Todd, (who had executed one of the notes, at the instance and for the benefit of Robert Todd,) filed their bill in chancery, in the Fayette circuit court, in this bill, the Bateses, the representahyes of Cox, of Isaac Morrison, of James Morrison, and Henry Skipwith and Walter Warfield, his agent, are all made defendants. Skipwith after-wards died, and the suit was revived against his representatives.
In their bill, the complainants set out the various contracts and agreements of their ancestor, Robert Todd, deceased, and allege that not more of the consideration agreed to be paid by Isaac Morrison for the 6,000 acres of land, than £59 Í6s lid, has ever in fact been paid by him, or any other person for him; that in consequence of the failure of Morrison to pay the consideration, their ancestor, Robert Todd, was under no obligation to convey the 6,000 acres of land, when the agreement was presented to him in’1807, by the Bateses; -but, being desirous to avoid controversy, and *179O r* K tP»' »"J rtr rt Ctr c p P"^ O). u_¡ Hj/íWÍR’tSf -»-i rt P Hrt t3 (t> o p~ P^o jjfvo, o> o> ,-+• 23&*L a ^ <r£*& ^ OT W .O^í^í c#^ ■>-» &wkey;. P- rt»-. reraui ~ . A *£» rt./rt q-co CD -\ <2"« o uJv<! <. • 25 dL_S ■® ® » 6J3-S P ?D CT 8 <• t er b- re “i £® g » £.» ip’3, or 3 3 “ svS^a & 5" n> ::HÍCTO ^1 CD 2? g- ¿' §“ bo^sv.gíaj s-3 3 ° g-a»®* o- • -a g-«+ 2 cr 5; ®*s ^3 O 2- £L § 3 — —d -íj.J®-' CD ¡2, a. co -i cs^fc cd 3 - O^i .0,3,® S, cd -o co Et- CD 3 Z? S ^ -nT »--§ cd.'^S. g>“ ^ -5-N S. “ cd i|í¿? %iffr'' O • 3j ££■ ‘í-í-" CD^rfc &■ CD ' crb&wkey; : CD- cd 3<*r en ¿ »*3 Jrt- ■■ s í ítf tí o -<3 OTC rt £ jr a» *r; cu crs cd, cp K „ Ü w _ — (T g «>•;* ►■j CT q , ¿j n P Ó -¡¡ ■ (í tí p ¿j'2- £- o £J* ct-' 5^ w- ^ q M , ü tu ó3 *h rt hO u< rt ., . C-» rt O ¿3 ^ m 3' *»•■*». C '=í»'r rt' cr-~f c - ir *"a co .S i cr * o (X o cr í p • *^ «*■*• <-+• Er£N« CD CD CD í£p3 rt o a cp *0 h’3 «i D ^ CQ ® S'3 CO r+'t-S* cr o v> cr co ^ ^ - — i.u ~ f-r- .4 ^ ^ o P r o 3 ÍS'D'S “ a,3 § p vt:* S' 3- ^ p n p “ p p a ^ trl cr Jp^ p. ^ o o o ?o S» P a* » ^2 - - ^-3-P 2 s sil ■o P 3 S ^ Cu *b ¿o . p J^5»BS °’u p"-1 13 O S'-1 su O je Cr o u. k~4 O ^ S p Wí.tí ° Oh cr htrq ¿O q c3 ÉS-c *, «5>^g 2SJIfr ni <D .-re b as 22 3 —1 o tí S p O 41 - K « ^ W>c2á co . «-+• CP _, «' (Í O p o | > S 'tfl'CH G *" & % © -*5 ■icí'i'iá o +s CJ ~t3- ir uj t-l* »— W CQ ^ j f-r- •-■ >_/ __ I-rt (D tí Oj ^ ^ íí. C OT ,-5* O cr m P- ^ c ® SSS in «lo g s S, g 2. CD 5' ~ art.3o3Saffl”',B'BS'isn c3-^ fe c 2- ^ ¡a w‘ ^ t cd ~ tjq «- °> » S. JT c-a3 <k¡ - ir1 ^ 3 3 cr rt- ET sr S' a ^ 2 t_ s J5‘ p cd CD O O 3ffl ®3i»3S'-3 »-S <-í» tP fírt —' tí 3 n u Cfl (P S- ^ cr ¿5 w » s ^ÍP ^ÜD 3 ET-- CD pj ¡C. ■"•■ CD J — 3 P r 3 - *• a airp.---SJ 'S© „ CD ° _ 5 C? 3 b- a & Sew S ^ : a o*, c® a a. ° : ® ¡» » 3 o-5 • o co ' rt cu £2, ^ rt íp t? cro Víl rt*- o-2 2 co «; 2 ,a a ,!^ c r* -*-* o P ,5 orí • «tg1* «I « «! o « y d <u - «o _c rt g'4-* «e 6 rt u ♦<-*> £ gr^'-o- «i p-'o <T> 3 =! -O" 8 «3 - « « ^ CJ 1> * K»' u, a) ►Q a) ^ - 5 S > o QV CO CU xrt rt -t-j > g ® 2 “ a p e,
erq o § tí p o P erq tp- ?-: p-CD S' Cu cr S ? R -.^<5 aj. D. p <D P d> >^S a? (O, o 3 e, o _ ni O -g ■*- T3 S o SP-2 50 S O O ^ rt V» O -O co *S o ^ ^ o 3: en - en U* O >o . P en 5' rt rt a> en v O 2. ^ —í ■* , es ^ 3 o3 » 3 rt X cp ,, t o ? «+ ». *-r» S _ rt ^ ¿ Cu>^ ^‘p ^ B - p rt o o rt m O en ' rt^ O CU rt 5 -5" rL “ CO rt ' v£- *^<í rt • oá S3 cd' nt 3 3 CD >~1 3 . r-á ffl o a 3 a <v ^ . , . n3 & «) c ¿ 0) tw i °* p Srt-, lrO ^ rv O' O rt % g to '=2 S rt m <-*- o > tt cr w-, a 3 "-Oí} a-nd o _ • a o2-a<M — S ^ CR aas ^ rt-a ~ o 4 '®'" 2 2 O- 3 a. “ ^ 3 -a-g Z-% CD-p ’o9 £ S" ~ ’■ m l *3 rt . o e cu O- Í3‘ ’ H ■^.2 sr éu- P ' ^ HffW® O lf? 2 ^ 8 3 53 ^-"2 §rs f%~*u ° Ü * «U X5 rt JU O W rC rt o %-« © ce '■£ v rt bD n -= ^ (U CU <D -rt rQ rt C U D . cü rt cr. <D <£ *tn &-v GJ • rt^-rt cr rt _^_ S-3 o rt rt* o S ; *180Todd, ra 1807, and that 'when applied'to :for thát patr-P0SB» Todd first ^denied having receive®‘any'hart of the price for the latid, either, from Isátc'eox-'orjsaac Slor-risori; but, afterkome reflection, admitted thaHie ha’8 received from J'ámes Morrison* about seventy pounds, which Jvas to be credited on the agreifeiSht, and proposed to give them (the Bateses) seven hundred acres of Ian®, the quantity acknowledged to be paid for by James Morrison; which proposition was acceded to by them, and the agreement of 1807 executed.- They admit holding the originábagreément of 1784, when tha’t of 180.7 was made, and that it was delivered by thenni, at that time, to Todd; but they insist that the íattér agreement was entered into for the purpose of discharging their claim to the one third of the original agreement, which had been assigned to James Morrison by Cox, and by the son of said Morrison, for himself and his co-heirs, assigned to them. They admit that the (obligations upon which judgments have been obtained, were given üpon a compromise of the suit which they bad commenced against Todd on the agreement of 1807, and protest against having made any false representations, or employed any unfair means to induce Todd to fencer into either agreement. They admit the payment of $400 by Warfield, and insist the bill should be dismissed, &c.
The representatives of James Morrison state, that their ancestor was entitled t© one third of the agree1ment of 1784, by assignment from Cox, .and admit that after the death of their father, that third was assigned by James, for himself and co-heirs, to the Bateses, &c.
The representatives of Isaac Morrison and Isaac Cox allege that their fathers were each entitled to one third of the original agreement of 1784; and after making their answer a cross bill, the representatives of Isaac Morrison pray for their ancestor’s third to be decreed to them, &c.
The representatives of Skipwith answer, alleging that their testator was a bona fide and innocent pur. chaser of the bonds upon, which judgments have been obtained, fora valuable consideration, from the Bateses-, and after making their answer a cross bill, pray a decree over against the Bateses, if, by the final decree, of the court, the complainants should be relieved against those judgments, &c. *181j%fteii;on ^^ÜQ&qp.hgeft a'wa-iafea^.i^. cQnjplaI«an-l| agái’nsMhfe’ju'dgiíi'eri^aí laye-? pCT.g;ej\ig|Land oécreM* liahcelmqní of the .two agreements madebetwéen Todd.' ahd.tb.e éa-teses; and by the-eonsentoftReBateshs arfé the- representatives of Skip with, to avoid circuity, of action,! decreed that the Bateses should ply the cpm-plaindnts the $4,0,0 which had-been paid td Sjdpiyilp by the,complainants,..ap'd .that the Bateses sh'quhf^KWJ t:he'..residue' of the,-, judgments to.the iepresentatiXes^f ákip:w,ith-, ,and thqfc the Bateses- should pay'-the .com» flaina-nts'- their costs. It was also decreed thqt the crg|s ill- of Isaac Morrison’s heirs- should be - dismissed. From that decree the defendants have appealed to, t^a court. , .....
' Throwing out of view the agreements, between Rf|b-ert Todd and the Bateses, it would not be contended that the agreement between Isaac Morrison and Robert Todd.could have been specifically enforced by a court ofequity; for although £&9 16s lid of the price agreed to háve been given for the 6,000 acres of land, may have-been paid, that sum forms too inconsiderable a ,part,of the whole consideration, to authorise a'n enforcementiofi Todd’s .covenant, alter, the great neglect of Isaac Morrison and -those claiming under him, in not paying the residue of the consideration.
But, notwithstanding the agreement of 1784 yould not have been specifically enforced by the decree of a court of equity, it does not thence necessarily follow, that Todd or his representatives should be released from the subsequent agreements entered jnto between Todd and the Bateses. The agreement of 1734 had, nevertheless, not been performed by Todd; it was still a subsisting demand against him, about which it was competent for the parties interested to contract and compromise, in the manner most acceptable to themselves. Erroneous impressions as to the extent of Todd’s liability under the agreement of 1784, may •have induced him to enter iqto that of 1807, with the ¡"•Bateses; and under the'influence of the same delusion, he: may have gives the obligations upon which the judgments at law ha^ebeen rendered; but an error of í-hgi&sbat, we apprehend, is insufficient to overturn those’ .súbseqiienj; agreements of compromise, if otherwise fairly obtained. Without regard to any original liabii*182ity, an existing ddbnand forms in itself 'a suffic'jenf con-sid'eration to upfeokl tanagreement oi||mp(;6’mise ;„\nd, when 'made,' tií-e^partiel? yn'll bedsit to abide fey'their compromise, unless, by misrepresentation oe other inf-due means, the agreement be contaminated with fraud.
But, in this case, relief is not sought by the com-playiants exclusively upon the ground of their ancestor, Robert Todd, having been mistaken as to the extent of bis liability under the agreement of 1784. They charge the Bateses with having fraudulently induced their ancestor to. enter into the subsequent agreements, by assuming to be the proprietors of the entire agreement of 1784, when'in fact they possessed an-interest of one third only. ■
The Bateses admit, that at the time of making those subsequent agreements, they were-possessed of an interest in but one third of the agreement of 1784, and deny that they ever assumed to be the proprietors of a greater interest.
it is mainly upon this controverted fact, that the decision of the present case must essentially turn. It is, therefore, important to advert to the circumstances which seem to have a bearing on this fact.
The. answer of the Bateses has been relied' on by the counsel of the deifendants, in support of the affirmative of the charge made in the bill. It was contended,' that accordingto their answers, the subsequent agreement of 1807, for. the 700 acres of land, must be understood to have been given in satisfaction of the whole of the land then admitted to have been paid for, and that Todd must ^consequently, whilst making that agreement, have acted upon the supposition that the Bateses wer'eentitled to the whole, and nota part only.
It may be, and is most probably true, that when making the agreement of 1807, Todd supposed that the Bateses were entitled to the benefit of the payment, which he admitted to have been made; and if they could not be so entitled, otherwise than as proprietors of the entire agreement of 1784, there would certainly be considerable force in the argument advanced by. the counsel of the complainants. But, according to the (¡¡statements contained in the Bateses answers, we apprehend, that as the assignees ofMorrison’s third, they were entitled to the exclusive benefit of the payment which they state that Todd admitted had been made., *183ss g-í&SS Sí £¡* § 9>¡ >>S -2, /! ’ O 2 ';3 a, = - --íp <d “ s- s- ]^£ipP lnt%- I* * § «rs-w§ ^s-s I * S.'^3o£ Sí S.cm. .® 2,s-g. g s cr üf-eí ¡r -“- g-w cL~ e¿g *? ~ h¡ f>J?s 4 m. ;4S •« V*> Oj.'C- 2^’ ^ Sí S fL" «*8 F&wkey; £.-§. g.-» ^ S-® „ 2.-SL «■ s. "b £cg; í a -» n <! . o era ? ex' tt>» -O tí -tí jf'«i ¡j w » 2- .r tíJ», 2.h_ 3 ja* S-í - < co -o &<«- sfítro ® o® *-< .tí ° ® S 2 —. ^ gi o ia’ '<-*■■ B ™>' ” ... 3 - „ So o-.&'12 2 ® S 2 £L (B ft. o g* - S5 3 a nr - tí S- ^ S cr» P.® í? p <15 G a “ r* 2 ^1, '3 ° í¿ ->.. -,_, a *_, •““ CrtíS'-tí-T-í! S’s-^tí'^ $ tí ra tí " 2 -u 2 3.^0 3 cu § ¿L tí^íSí .«-fe . S' w ^ g > 2iT 3 ^ ^’I QJ T3 (U a3 S '' 15 bo G c tí CB 3 !tí--a> ¿L E,^crs 31 S3 •Se S-í*-O a p :.-S5 - -tí Í2. ®;Br-2/¡l-g.°%S p-tS-í; ^ G ^ S* ^ +3*%h O g ® tí-3 w ^ 3 ,3.fjq.;. ~ — I — / 3" cr te 0^ TÍ .^3 s a.^voíB-á» s= 3 -• < Sí5-p ® _,tí - .>) G O ¿SJftO*» ■tn^O-ÍXJ ^H-o V< -tí '• o "<j p'-Í a S^3 ‘ pP <í “^CDj-Ha'^-D P ^ PVí^ítí S4t» < 0*j ^2 2" CD r-,.- "- 'CD .rcn <5-' ^ o tí ® -ff ^ £.-?*§ S CD *-5 C -i-t tfe-¡¿ Stí tí*. P M-*o '-áa?£* o ci< c& ^-3 -^*rd « ^ '“ STOSS'© 00-P Í2. P Vi . n/® o ^ s ¿S (D C? oj o) rt (D’.íS 05 ^ « S - ■■ « 2 3 §M O 3 o J” ® ■ r. \_ 3^c«.<-t-Ocr ¡-a o -*> c CÜ o; rt O 3 3S 3 p *B ft cr E tí n> 33 *5 p »
tí “ o “ ° 5'^S 2- tí b tí (T> < O «» Cj í-r >-« -L« fti ü (0 es ^ !? en ? en •» P-« P- P-1 O C » ¡ Cu * cd cd. P •+■> en f!) r(- H "■3 erg o "-.tí 3 “ g ° b 3. tí ... g tí tí B o 9-_ CO -; tí>tí 5.0^ tr* tí* tí tí tí o *>r tí ^ 2 o p >v. - CD a* *1* CD a 2 o ° o> 5» p <p ~l p. <p CP *+-< f-t o .2 ^.BíS J J £ O O "£! tO CU tí H _cra 3 es á cd CD CD £ íC tí •£ ^ 'S, b -oí; -SP c -a CD ►i • CD O ? 23 <! » CO CO O O q ^ Q? o*-o *S ,» -’->» S o o tí ^ ,3 "m S o • S' t1 B § B“ O 3 O o n, CD rl *2 _ B G >-. £3 e CPQ S.J3 O CD ,XJ <U S J P tíl en 2 ^ bD . G bX) G ~ ¿ (S c3 §.” J , t* ro & rtiigí S’Sp’tí b* 3 EH ^ ^ n: S3 _. tí ■„.<£T ^3 £3 P Sí ^3 O s; ft-'ffl -t i2- S w “ C- tí «* 3 S-qg _ 2.^ o S“3 , G- 2. tí-crq zr G* a§ ■j p :p 2- » O g G 0) 1.2 ^ P O tC ÍJ1 Í3 'pJ* üj ' S ■*) * tí* .\ ... —I Cu o'* ít' G tn -3 .2 tí tí „ O an r cotí? bí)"¿3 tí ‘S a ... tí. ¡3 S o ■ a; tí "tí P 0 t-i tí -31 rrf tí'ifl »l § *3 tn ^ ^ o d'_fJ 3 o « 43 ^ §|§ § »N 8.1." rn ^ G h-tí p S O S 3 5^5 ^ aq ^ & cd <’ * 8**5 E? “ p 3-n ¿a g ^ 2. ? ^ o i 5 m O CD >*■ 3.£f -b cra ara i3CC G ^ r O^ en .t® q ^3 c „ o g J £: '-e O o O nc; G3 tí G 3 b S 3, H tí tí?15 ce 34j 2 ,p- u ^ to C-*?P jo 3 o 12 o «c s-r ce - -Q c 3 o o-: p o Cu ^ P cu cr a ? a p. ,_r. í-u cd . X r S‘ a o P ,J* P O . ^ U v; O 'OCD ^ en 2* CD g^' 3' O ^3 iSfS'G :p* a o Oh en. ri P O O z? ce ce ^ 2 Q5 O } rvp P ) FQ u< •b'SíS o* o £. w tí 3 b* o* -.era 5,,tí,<t)..r ^.tí . 2 ^ , CD a P en ■ 2. »"5^" ^ tí- ® 3 o--* tí ,B á - O* s »■ ° -^ rr* CD S G CD i'?! . tí O S- tí 3 Oa P 2? tí ¡ » 3. g a t*~ ® n> Sí » «Q o » '&3a2g' , tí = t* 0“^ " O *184an absenté- release, .or. acquittance * from ..the, entire * Á’n'A' Vh« "¿.rSk. 'assignees of fhe h.eiys.of Mo.rrisonfVas the cobsideratio^n, ' wh^-noistate the consideration to he the entire agreement of 17^4? ' ’ .' ^ . tf.
puj it was contended in argument, that possession is, .ofitself, .evidence of right; and .as the agreement of ,Tj84,vyas held by .the Bateses when the agreement of ..’1807 was made, and; was thepv delivered to Todd, ’the presumption is in favor of the original, agreement',hajr ■Jpg been entirely satisfied by the subsequent ope. If, rhbwevér,.spch- a. presumption might, in ordinary cases, ;b.e indulged,,, the circumstances to which we have already adverted, would counteract its influence in this , «case. , Besides, the Bateses were' not the holders' of the agreement for the exclusive benefit, of others; they had .'purchased one third of the agreement, and under that purchase had obtained the possession; and after having received satisfaction for that interest, they may have honestly supposed it correct to deliver up .the possession of the agreement to Todd.
. .But it was finally contended in argument, that the .'charge contained in the complainants’ bill is fully supported by the depositions contained in the record. J
The record contains but two depositions; one, that of Joseph H. Hawkins, and the other the depositson of Doctor Witherspoon. Hawkins appears to have been the counsel of Todd in the suit brought by the Bateses .on the agreement of 1807, and was present at the compromise of that suit, and at the giving of the obligations upon which the judgments at law have been obtained. He states, “ that he has no doubt on- his mind, that it was understood between the parties, at the time of the compromise, that the whole claim against R. Todd was then fully and finally settled. He is the more strengthened in the belief, by the recollection of his háving recommended to said Todd to compromise the Claim, on the ground that the claim was-of long standing, that Todd was getting old and' infirm,” &x. “ The deponent feels well assured, that he should not have recommended a compromise with the said Bateses, had he not, af that time, believed that the whole claim agdifist ..T-otftl was thereby fully and finally settled, Hsus' the more confirmed in his belief that both parties 'viewed *185ihe whole claim against Todd finally adjusted, from the -of';te,;Í#1 agreemelit Jiaving'been „d^ered up to Food.” ' w ' ,
That Mr. Hawkins is of the firm and honést belief that the entire.agreement of 1784 h'as been co^pr^riia-ed and, adjusted by the subsequent agreements Between Todd and the Bateses, is evident from his deposition; but,that belief appears, from the language employed in his deposition, to be more the result of argument and fbference, than from any positive recollection of any thing which he represents to have fallen from the Bateses. He was the counsel of Todd, the claim wasbf long standing, and he is confident that h’é would not have advised a compromise, if he had not understood the whole claim was to be adjusted. But it should be recollected, that it was the suit upon the agreement of 1807, and not that of 1784, that the witness was employed by Todd to defend; and may he not, after the lapse of several years, in calling up his recollection of a .fact which transpired in the course of his professional avocations, have confounded the claim then asserted by the Bateses against his client, with a previous agreement out of which that claim grew, and to adjust and compromise which, the agreement upon which that claim was founded, was entered into? It is not denied by the Bateses, but that the whole of the claim-then asserted under the agreement of 1807, was cornpromis-ed by the agreement.spoken of by the witness; but how, in the adjustment of that claim, can it have become necessary, or even pertinent', for the parties to travel back into the original agreement, and compromise a claim which was not then even asserted by the Bateses?
With respect to the deposition of Witherspoon, it is proper to premise, that it consists entirely of a statement of what the witness alleges he heard one of the Bateses say in relation to the transactions with Morrison and Todd, several years after the agreement of 1807 was entered into by Todd. We are informed by bis deposition, that Bates acknowledged that he had purchased the original agreement of 1784, from one of the topi's of James Morrison, and that when he applied to Twd.for the land, Todd denied having received but a smitli part ‘of the consideration; and that it was finally agreed between him and Todd, that Todd should give *18670Q aeres, oí* 'land, as described in the agreement oí 1807, and that h;e woulddeliverupthponginal’-agree*'ment'of 1784, to be cancelled. ~ , v -- ' ‘
The acknowledgment of Bates, thus detailed by the witnesses, no doubt, competent evidence.; but evidence of that sort is at all times of a very unsatisfactory nature, ahd deserves the most rigid scrutiny of the court. From tíie frailty of human memory, it is not to be supposed, that the precise expressions of the person making the acknowledgment can be recollected by the witness; and if they could be recollected, when spoken in a casual Conversation, they might frequently tend snore to mislead than» develop the true nature of the transaction to which they relate. When there is no motive to detail the whole of a transaction, it is not unusual, when the subject incidentally occurs, for the speaker to omit many circumstances, which, if mentioned, might produce a quite different impression on the hearer. The witness, Witherspoon, may have inferred from the general language employed by Bates, that the entire agreement of 1784 had been purchased by him from one of the heirs of James Morrison, and that by the subsequent agreement of 1807 the entire interest so purchased was adjusted and compromised\ whereas, from the assignment which was made by the heir of Morrison, it is evident but one third of that agreement was purchased by Bates; and from the agreement of 1807, and the receipt then given by the -Bateses, it is also pretty obvious that it was the interest of Morrison only, which was then compromised.
Upon .the whole, we think that the complainants in the court below have not shown themselves entitled to any relief against the contracts made by Todd with the Bateses; but as, at the time of making the contract with Todd, the Bateses were possessed of the equity of James Morrison, deceased, by whom the entire amount received by Todd under the agreement of 1-784, had been paid, neither t-he heirs and representatives of Cox, nor those of Isaac Morrison, can have any just cause to assert their claim u^der the agreement of 1784, against the complainants.
The decree must, therefore, be reversed with costs, and the cause remanded to the court below, aiid-i? decree there entered in conformity with this opinion/ '